UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFREY A. NELSON,

        Plaintiff,

v.

                                  19-CV-6221 MAT
                                  DECISION AND ORDER

LESLIE LISSON, et al.,

        Defendants.

---

Pro se Plaintiff Jeffrey A. Nelson ("Plaintiff") is an inmate currently confined at the

Five Points Correctional Facility. He filed this civil rights action for relief under 42 U.S.C.

§ 1983, Docket Item 1 ("the Complaint"), and seeks to proceed *in forma pauperis*, Docket

Item 2. He has also moved for a temporary restraining order. Docket Items 3 and 4.

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and

filed the required authorization, Docket Item 2, he is granted permission to proceed *in*

*forma pauperis*. Therefore, this Court has screened the Complaint under 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(a), as discussed below, and determines that some of

Plaintiff's claims must be dismissed with leave to amend.

## DISCUSSION

### I.   Legal Standard

#### A.   Initial Review

Section 1915 "provide[s] an efficient means by which a court can screen for and

dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)

(citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a

complaint in a civil action in which a prisoner seeks redress from a governmental entity,

or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).

In evaluating the complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

**B. Section 1983**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Yet a supervisory prison official can be found to be personally involved in an alleged constitutional violation in one of several ways:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

## C.    Timeliness

The statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 in New York State is three years, as provided in New York C.P.L.R. § 214(2). *See Owens v. Okure*, 488 U.S. 235, 251 (1989); *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990). In addition, federal courts are required to borrow New York's rules for tolling the statute of limitations unless the rules are inconsistent with federal law. *See Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

Here, as discussed further below, the Complaint, which was filed at the earliest on March 28, 2019, includes some allegations related to events that occurred in 2015. Therefore, it is apparent that the three-year period during which Plaintiff could properly bring such claims had expired before this action was filed. It is not clear from the Complaint that any tolling provisions, *see Jewell*, 917 F.2d at 740, would apply here.

## II.    Plaintiff's Allegations

Plaintiff asserts various constitutional claims related to his confinement at the Wende Correctional Facility ("Wende"). A liberal reading of the Complaint reveals Plaintiff's belief that he was the victim of repeated harassment by numerous prison officials in retaliation for grievances that he filed against them and their coworkers.

### A.    First Cause of Action

On March 2, 2015, Plaintiff was transferred to the special housing unit (the "SHU"), where Defendant Lisson, a social worker for the Office of Mental Health ("OMH"), "was operating a masturbation program." Docket Item 1 at 12. Plaintiff filed numerous grievances against Lisson in April 2015, and on May 6, 2015, Lisson filed a "false" mental health report, stating that Plaintiff was in danger of harming himself. *Id.* at 13-14.

4

Defendant Lisson then "team[ed] up with" Defendant Scarozza, a psychiatrist, and asked him to change his complaint or they will report that Plaintiff is delusional and place him on "Haldol." *Id*. at 14. Plaintiff, wearing only a smock, was held in a suicide observation cell with feces on the walls and mattress for five days. *Id*. at 13-14. He filed a grievance against the mental health staff on May 15, 2015.

On December 29, 2016, Plaintiff was depressed and suicidal due to the staff's "abusive cruelty," which "compelled" him to harm himself. *Id*. at 14-15. Lisson and Drs. Scarozza and Stein "retaliated" against Plaintiff by falsely reporting that he was "delusional," and he was transferred to the Residential Mental Health Unit ("RMHU"). *Id*. at 15. He submitted another grievance, presumably about this incident, to the Central New York Psychiatric Center ("CNYPC") on March 27, 2017. *Id*. at 16.

## B. Second Cause of Action

Plaintiff was assigned to Defendant Kevin Kelly, another OMH social worker, for mental health therapy. *Id*. at 17. From July 2015 to October 2015, Kelly falsely reported that Plaintiff was "delusional" in retaliation for Plaintiff's grievances against Kelly's co-workers. *Id*. at 18. On July 27, 2015, Kelly advised Plaintiff to stop writing complaints and they would not find him to be "so delusional" and in need of "psychosis medication." *Id*. at 18. On July 30, 2015, Kelly and Dr. Battu, a psychiatrist, conducted an interview of Plaintiff, after which Kelly falsely reported him to be "delusional" and Dr. Battu diagnosed him with anxiety and depression, finding "no evidence of overt psychosis." *Id*. at 18-19. Plaintiff was transferred back to the RMHU. *Id*. at 20.

5

### C.  Third Cause of Action

On June 12, 2015, Correction Officer ("CO") DeMarais failed to provide Plaintiff with his shower that day because "her prostituting illegal activity interfered with her work." *Id*. at 22. DeMarais later came to Plaintiff, told him not to worry about the shower, and made a "sexual offer." *Id*. Plaintiff had a "panic attack, believing that she was trying to set him up with a transmitted disease." *Id*. After he declined her offer, CO DeMarais asked him if he was "gay or something," and Plaintiff cursed at her. *Id*. at 23. On June 14, 2015, Plaintiff filed a grievance concerning this incident, and, on June 17, 2015, COs DeMarais and Bobo retaliated against him by putting him in a "choke hold," kicking him three times in the face, and throwing a "bucket of dirty disinfected water on him," requiring him to wash his face with toilet water. *Id*. at 23-24. Plaintiff suffered bleeding, swelling, pain, a stiff neck, and burning skin. *Id*. at 25. After he complained about the incident to Nurse Matson, she and CO DeMarais denied him medical care and filed a false misbehavior report, which for which he was sent to the SHU for 60 days. *Id*. at 25.

On December 6, 2016, CO DeMarais, who had previously been suspended from duty for 12 months, locked Plaintiff in a shower while she conducted a search of his cell and stole "all of his personal property," including a facility-issued razor. *Id*. at 26. He later served 105 days in the SHU. *Id*. at 26.

### D.  Fourth Cause of Action

On May 11, 2016, an inmate grievance program ("IGP") clerk showed other inmates a printed statement of Plaintiff's inmate trust account, which showed a refunded transaction of over $1,000.00. *Id*. at 27. This caused Plaintiff to be later "violently assaulted" by one of the inmates, who had been attempting to "extort" the money from

Plaintiff's account. *Id.* at 27-29. Plaintiff suffered pain, swelling, a black eye, headache, and mental and emotional anguish. *Id.* at 29.

### E.    Fifth Cause of Action

On December 29, 2016, Plaintiff felt compelled to cut his wrist with toenail clippers after Defendant Evans, an OMH social worker, refused to provide mental health treatment and encouraged Plaintiff to kill himself by taunting, "Go on and kill yourself! You made everyone mad at you anyway! It is the best thing to do!" *Id.* at 30-32. Plaintiff was also denied emergency mental health care from "numerous" other staff members at that time. *Id.* at 31.

### F.    Sixth Cause of Action

Also on December 29, 2016, as Sgt. Bizub escorted Plaintiff to the medical building, he pushed Plaintiff against a wall and punched him in the left side of his face and jaw, "knocking [Plaintiff] unconscious." *Id.* at 33-34. Sgt. Bizub yelled: "You do not pull this stupid mess while I am working! And you do not threaten my staff[]!" *Id.* at 34. After Plaintiff regained consciousness, Sgt. Bizub "stomp[ed] him on the left side of his face and twist[ed] his" foot on Plaintiff's face. *Id.* Although Plaintiff suffered swelling, pain, stiffness, headache, and three loose teeth, he was denied dental care by the nurse administrator, Defendant Burnett. *Id.* at 35. Plaintiff's teeth were removed on October 12, 2017, which caused him to require dentures. *Id.* at 35-36.

### G.    Seventh Cause of Action

Superintendent Eckert, Deputy Superintendent Lowerre and Commissioner Annucci failed to properly control an asbestos removal project, causing Plaintiff to inhale "white powder asbestos debris" on June 17, 2016. *Id.* at 36-39. The substance caused

7

burning in his eyes and nostrils, sore throat, runny nose, and sneezing for one week, and this was treated by splashing water on Plaintiff's face. *Id.* at 38-39.

## H.     Eighth Cause of Action

While Plaintiff was involuntarily confined to the RMHU on March 21, 2017, another inmate threatened him in the presence of CO Heyl. *Id.* at 40-41. Plaintiff reported the threat to several other officials, including Defendants Helmick, Burri, Paige, and Mott. *Id.* at 40-41. The next day, these Defendants "intentionally sat the threatening inmate" next to Plaintiff, who was leg cuffed to his chair, and the inmate "violently attack[ed]" him, "compelling" Plaintiff "to defend himself." *Id.* at 41-42. Plaintiff suffered swelling and pain in his chest, ribs, arm and back and a "needle sensation" in his left arm. *Id.* at 42. He was denied medical treatment and documentation of his injuries by Defendants Stanton, Young, and Helmick. *Id.* at 43. Plaintiff received a misbehavior report ("MBR") for fighting and was sentenced to 60 days of keeplock. *Id.* at 43. Plaintiff alleges that Young and Heyl were later terminated for illegal activity. *Id.* at 43-44.

## I.     Ninth Cause of Action

CO Heyl filed a false MBR against Plaintiff, who was thereafter sentenced to 60 day of keeplock; however, the charge was later reversed and dismissed. *Id.* at 45. On April 11, 2017, Defendant Fordham, a social worker, advised Plaintiff to "stop writing complaints" because he "will not win against [the staff's] written reports." *Id.* at 46. Fordham then falsely accused Plaintiff of performing a "lewd act," which caused Plaintiff to faint, hit his head, and suffer swelling, bleeding, a split lip, and cracked teeth. *Id.* at 47, 49. No medical treatment was provided. *Id.* at 48.

### J. Tenth Cause of Action

On May 28, 2017, CO Lock "aggressively told Plaintiff: "you need to be rape[d] by [an] inmate! If I had it my way I will do it myself." *Id.* at 49-50. Plaintiff reported the incident to a supervisor and filed a "PREA" (Prison Rape Elimination Act) complaint. *Id.* at 50. On August 7, 2017, Lock "contaminated" Plaintiff's "meal with some kind of detergent agent-chemical that taste[d] like soap" and causing a stomachache and numb tongue. *Id.* Plaintiff complained to several high-ranking prison officials, and, on August 14, 2017, Lock retaliated by dropping Plaintiff's meal and filing a false MBR against him. *Id.* at 50-51.

Plaintiff filed a written complaint on August 16, and, on August 24, 2017, CO Lock harassed Plaintiff by making kissing gestures and using suggestive language when he and CO Lazore escorted Plaintiff to a medical room. *Id.* at 52-53. Plaintiff ran from the COs, who then ran after him and punched, elbowed, and jumped on Plaintiff. *Id.* at 53-54. Plaintiff suffered swelling or his ribs and neck, pain in his arms and hands, a concussion, dizziness, blurred vision, vomiting, and headache. *Id.* at 54. He was denied medical care by Nurse Gardener, and Garry Sullivan, an OMH social worker, filed a mental health report in which he downplayed Plaintiff's injuries to cover up for Lock. *Id.* at 55.

On December 4, 2017, CO Lock "hired" Defendant Bishop to file a false MBR against Plaintiff, which caused him to have a mental breakdown and cut his forearm with a razor on December 6, 2017. *Id.* at 57. Plaintiff was then transferred to the suicide observation unit for 40 days. *Id.* at 57-58.

## K.   Eleventh Cause of Action

While confined at the Sullivan Correctional Facility ("Sullivan") in November 2018,
Defendant Laura Miller, an OMH social worker, filed a false MBR against Plaintiff in
retaliation for his complaints about her OMH colleagues, stating "OMH influence is
everywhere!" *Id*. at 59-60. Plaintiff suffered an emotional breakdown and was sentenced
to 60 days in the SHU. *Id*. at 61. After having Plaintiff removed from a mental health
program class, Defendant Roseanne O'Connor, another social worker, filed a false MBR
against Plaintiff two days before his conditional release parole hearing. *Id*. at 61-62.
Plaintiff suffered another breakdown and was transferred back to the mental health crisis
unit. *Id*. at 62-63.

## III.   Constitutional Claims

### A. False Reports

Each cause of action here is replete with allegations that a number of Defendants
filed false misbehavior and false mental health reports against Plaintiff. All of these claims
must be dismissed.

"The prison inmate has no constitutionally guaranteed immunity from being falsely
or wrongly accused of conduct which may result in the deprivation of a protected liberty
interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S.
982 (1988); *see also Husbands v. McClellan*, 957 F. Supp. 403 (W.D.N.Y. 1997). Thus,
any claim that an officer filed false charges, in and of itself, does not state a cognizable
claim that he or she violated a prisoner's due process rights. A potential constitutional
violation arises in the event that the prisoner did not receive adequate due process during

10

his proceedings; thus, the claim is not based on the veracity of disciplinary charges but on the conduct of the hearing itself.

## B. Retaliation

Plaintiff asserts that most of Defendants' action against him was retaliatory in nature.

It is well settled that prison officials may not retaliate against prisoners for exercising their constitutional rights. *See Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the punishment imposed by the prison official conduct was motivated by this protected conduct. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (internal quotation marks omitted).

Moreover, courts recognize that prison retaliation claims are prone to abuse with respect to any decision that a prisoner dislikes. *See Colon*, 58 F.3d at 872 ("[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care.") (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13; *see also Graham*, 89 F.3d at 79.

Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of a filed grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) the defendant's statements regarding his motive for disciplining the plaintiff. *See Colon*, 58 F.3d at 872-73. To survive dismissal, retaliation claims must be "supported by specific and detailed factual allegations." *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (internal quotation marks omitted).

In this case, construing Plaintiff's allegations to be true as the Court must, some of his retaliation claims must be dismissed nonetheless. Plaintiff frequently accuses mental health counselors of filing false mental health reports that Plaintiff is delusional or dangerously depressed. However, his own pleadings often contradict his assertion that the reports are untrue, or they otherwise fail to plausibly indicate any improper motives. Plaintiff's claims against Defendants Lisson, Scarozza, and Stein in the first cause of action are either time barred or wholly conclusory, or both. Plaintiff's retaliation claims in the second cause of action against Defendant Kelly are wholly conclusory and fail to assert any reason to infer a retaliatory motive.

However, Plaintiff's retaliation claims in the third and tenth causes of action shall proceed to service against Defendants DeMarais, Bobo, and Lock.

## C. Eighth Amendment Claims

### 1. Excessive Force

Plaintiff alleges that excessive force was used at times by a number of correction officers.

"Corrections officers are given the lawful authority to use such physical force as may be reasonably necessary to enforce compliance with

12

proper instructions and to protect themselves from physical harm from an inmate. However, when corrections officers maliciously and sadistically use force to cause harm to a prisoner, and the prisoner suffers at least some injury, the result is cruel and unusual punishment under the Eighth Amendment, regardless of the seriousness or significance of the injury to the prisoner."

*Henry v. Dinelle*, 929 F. Supp. 2d 107, 117 (N.D.N.Y. 2013) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)).

Generally, to assert a violation of the Eighth Amendment, a plaintiff must plausibly allege that the force was used, maliciously and sadistically, to cause harm, and not in a good-faith effort to maintain or restore discipline. *See Henry*, 929 F. Supp. 2d at 116. The need for the use of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by responsible corrections officers, any efforts made to temper the severity of the forceful response, and the extent of the injury suffered by the plaintiff can all be considered by the Court. *See id.* at 116-117.

In light of the facts detailed above, Plaintiff has stated claims of excessive force sufficient to proceed to service against Defendants DeMarais and Bobo (third cause of action) and Sgt. Bizub (sixth cause of action).

However, his excessive force claims against COs Lock and Lazore for their conduct after Plaintiff ran from them (tenth cause of action) are dismissed with leave to amend. The pleadings plainly reveal that the force described was reasonably necessary to restore discipline after Plaintiff ran, not a malicious and sadistic attempt to cause harm.

### 2.    Failure to Protect

With respect to an official's duty to protect:

[t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an

13

inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

> The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (internal citations omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

In this case, the Court finds that Plaintiff's allegations set forth a failure to protect claims against the inmate grievance program clerk (fourth cause of action), who will be added to this action as Defendant John Doe[1] and Defendant Felicia Evans, who is alleged to have encouraged Plaintiff to committed suicide (fifth cause of action).

Plaintiff's claims against the supervisory Defendants, Eckert, Lowerre, Annucci (seventh cause of action) and Krygier (fourth cause of action) are dismissed for lack of personal involvement. As stated above, the conclusory allegation that they failed to adequately supervise a construction project is insufficient to establish § 1983 liability. Moreover, in the seventh cause of action, Plaintiff's report of minor physical discomfort

---

[1] The Clerk of Court is directed to amend the Caption accordingly.

14

contradicts the suggestion that he faced a substantial risk of serious harm during the asbestos removal project.

Plaintiff's claims against Heyl, Helmick, Burri, Paige, and Mott (eight cause of action), which accuse them of seating him next to an inmate who had previously threatened Plaintiff, are dismissed for failing to allege how each Defendant was personally involved in the relevant seating decisions.

Plaintiff is granted leave to amend the pleadings as needed.

## D. Deliberate Indifference to Serious Medical and Mental Health Needs

For medical care to be so inadequate as to amount to the "cruel and unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that the defendant's actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 102, 106 (1976). The first component of such a claim requires that Armstrong's medical condition be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)); *Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.").

The second component is subjective. It requires a plaintiff to allege that the prison official had actual knowledge of his serious medical needs but was deliberately indifferent thereto. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

An alleged delay in treatment due to a "bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady" does not present deliberate indifference. *Sloane v. Borawski*, 64 F. Supp. 3d 473, 493 (W.D.N.Y. 2014) (quoting *Harrison*, 219 F.3d at 139)). "[M]ere disagreement over the proper treatment does not create a constitutional claim." *White v. Clement*, 116 F. Supp. 3d 183, 186 (W.D.N.Y. 2015) (quoting *Chance*, 143 F.3d at 703).

Plaintiff alleges that he was denied medical care by Defendants DeMarais, Nurse Administrator Burnett, Nurse Gardner, Stanton, Young, Helmick and various unidentified prison staff members (in the third, sixth, eighth, and tenth causes of action). All the medical claims against these defendants are wholly conclusory and/or fail to allege a condition that may produce death, degeneration, or extreme pain or the parties' deliberate indifference. Although degenerative dental conditions can be objectively serious, Plaintiff's allegation in the sixth cause of action that Burnett denied or delayed his dental care fails to set forth the subjective component of an inadequate dental care claim. Consequently, Plaintiff's claims for deliberate indifference to his medical needs are dismissed with leave to amend.

With respect to deliberate indifference to his mental health needs, Plaintiff's claim against Defendant Evans, who is accused of encouraging him to commit suicide (fifth cause of action), is sufficient to proceed to service. Docket Item 1 at 30-32; *see Sims v.*

*Gorman*, No. 09–CV–6643 (MAT), 2012 WL 566875, at *4–5 (W.D.N.Y. Feb. 21, 2012) (holding that an inmate's "diagnosed mental illnesses . . . and concomitant suicidal ideation and actual suicide attempts, constituted a serious medical need."). However, to the extent that Plaintiff challenges the decisions of other OMH staff members to transfer him for psychiatric observation or for further evaluation, a disagreement over whether he should have been placed on crisis watch "is not an actionable Eighth Amendment claim for purposes of 42 U.S.C. § 1983." *Sims,* 2012 WL 566875, at *5. Therefore, those claims are dismissed with leave to amend.

Finally, the Court has considered Plaintiff's claims against Defendant Fordham (ninth cause of action) and CO Lock (tenth cause of action). Neither Fordham's alleged conduct, by advising Plaintiff to stop writing complaints and falsely accusing him of lewd conduct, nor CO Lock's two instances of verbal sexual harassment allege any constitutional violations. *See Boddie v. Schnieder*, 105 F.3d 857, 860-861 (2d Cir. 1997) ("No single incident [of sexual harassment] was severe enough to be 'objectively sufficiently serious.' Nor were the incidents cumulatively egregious in the harm they inflicted."). As to the remaining Defendants, L. Bishop, Tricia Miller, John Colvin, Edward Rizzo and Thomas Schlee, Docket Item 1 at 59, against whom no specific allegations of wrongdoing have been asserted, any claims against them are dismissed for lack of personal involvement in a constitutional violation. *See Colon*, 58 F.3d at 873.

Plaintiff is granted leave to amend these claims.

## E. Requests for Temporary Restraining Orders

Rule 65(b) (1) of the Federal Rules of Civil Procedure provides that:

The court may issue a temporary restraining order without written or oral notice to the adverse party . . . only if (A) specific facts in an affidavit or a

17

verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). A party seeking injunctive relief must demonstrate that it "irreparable harm" absent such relief and "either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010)).

Here, Plaintiff does not show an attempt to notify Defendants of his request for injunctive relief, nor do his papers demonstrate a likelihood of success on the merits and irreparable injury, or raise any serious questions going to the merits. Docket Item 3. In his first application, Plaintiff merely reiterates his allegations concerning the "false" lewd conduct charge, which do not indicate the likelihood of future harm. *Id.* at 4. Moreover, the Defendants named in this action are not alleged to be involved in any of the conduct speculated upon in Plaintiff's second application, Docket Item 4, which seeks to block his transfer from the Downstate Correctional Facility to the Five Points Correctional Facility. *See Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (finding that the relief that a plaintiff seeks by way of injunction must relate to the allegations contained in the underlying complaint) (citing *Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993).

Consequently, Plaintiff's requests for injunctive relief, Docket Items 3 and 4, are DENIED.

## F. **Sullivan Correctional Facility Claims**

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, Plaintiff's retaliation claims against the Sullivan employees, Defendants Laura Miller and Rosanne O'Connor, are severed and transferred to the Southern District of New York. *See* 28 U.S.C. § 1404(a). Plaintiff's claims related to alleged wrongdoing that occurred while he was confined at Sullivan are more appropriately heard in the district where that facility is located. Those claims are distinct from the claims arising out of alleged wrongdoing that arose while Plaintiff was confined in the Western District of New York and will require different witnesses and documentary proof. This Court takes no position is taken on the sufficiency of the claims that are transferred to the Southern District.

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed a signed authorization, his request to proceed *in forma pauperis* is GRANTED.

For the reasons set forth above, some of Plaintiff's claims will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless Plaintiff files an amended complaint no later than **45 days after entry of this Order** that includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior Complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom., Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, an amended

complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint to be answered.

Plaintiff's Motions for temporary restraining orders, Docket Items 3 and 4, are DENIED. The Clerk of Court is directed to add Defendant John Doe, the IGP clerk, to the Caption, and the Attorney General of the State of New York is asked to obtain the identity and address of this individual and submit it to the Court, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), within **30 days** of entry of this Order.

## ORDER

In light of the above,

IT HEREBY IS ORDERED that Plaintiff's Motion to proceed *in forma pauperis* is granted; and it is further

ORDERED, that pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), all of the claims related to the Sullivan Correctional Facility against Defendants Laura Miller and Roseanne O'Connor are severed and transferred to the Southern District of New York; and it is further

ORDERED, that no ruling is made as to the sufficiency of the Complaint with respect to the claims that have been severed and transferred to the Southern District; and it is further

ORDERED, that Plaintiff's Motions for injunctive relief, Docket Items 3 and 4, are denied; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint as directed above by no later than 45 days after entry of this Order; and it is further

ORDERED that if Plaintiff does not file an amended complaint as directed above, the Clerk of Court is directed to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon Defendants DeMarais, Bobo, John Doe, Evans and Bizub, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED, that the Clerk of Court utilize the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website, http://www.doccs.ny.gov/faclist.html., as needed; and it is further

ORDERED, the Clerk of Court is directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>; and it is further

ORDERED, that pursuant to 42 U.S.C. § 1997e(g)(2), Defendants are directed to respond to the Complaint upon service.

SO ORDERED.

Dated:     6 - 3 - , 2019
          Rochester, New York

MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE